Colin Mulholland, Esq.
30-97 Steinway, Ste. 301-A
Astoria, New York 11103
Telephone: (347) 687-2019
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARMELA PACHECO, MICAELA JUVENCIA SIMAJ, JOSE MARGARITO MORALES ORELLANA, JUAN ANTONIO MORALES, MIRIAM FLORES ANTONIO, MARISOL LOPEZ, JUAN PINEDA, LESLEYANN BRAVO and JUAN CARLOS ECHEVARIA ACARO. | **Civil Action No.: 19-cv-5485** <br><br> **COMPLAINT** <br><br> **ECF Case** <br><br> **JURY DEMANDED** |

*Plaintiffs*,

-against-
PRESCO INDUSTRIES INC., MIST ENTERPRISE
INC., MEJOR TRABAJO INC., NEW YORK
PRESCO INC., DESIGN N SAFETY INC, YAKOV
EISENBACH, ANDRES SALGADO and
MORDECHAI AINHORN (aka 'Monty').

*Defendants.*

CARMELA PACHECO, MICAELA JUVENCIA SIMAJ, JOSE MARGARITO

MORALES ORELLANA, JUAN ANTONIO MORALES, MIRIAM FLORES ANTONIO,

MARISOL LOPEZ, JUAN PINEDA, LESLEYANN BRAVO and JUAN CARLOS

ECHEVARIA ACARO ("Plaintiffs"), by and through their attorney, Colin Mulholland, Esq., as

against PRESCO INDUSTRIES INC., MIST ENTERPRISE INC., MEJOR TRABAJO INC.,

NEW YORK PRESCO INC., DESIGN N SAFETY INC, YAKOV EISENBACH, ANDRES

SALGADO and MORDECHAI AINHORN (aka 'Monty') (collectively, "Defendants"), allege

as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants PRESCO INDUSTRIES INC., MIST ENTERPRISE INC., MEJOR TRABAJO INC., NEW YORK PRESCO INC., DESIGN N SAFETY INC, YAKOV EISENBACH, ANDRES SALGADO and MORDECHAI AINHORN (aka 'Monty').

2.      Defendants own, operate, and/or control a demolition and construction company under the named 'Presco Demolition' that operates under at least five (5) interchangeable corporate fronts each of which is headquartered in Kings County where they subjected their employees to outrageously dangerous working conditions coupled with completely insufficient pay practices.

3.      Defendants recruited Plaintiffs by advertisements on Facebook and word of mouth for demolition and construction day workers.

4.      Defendants asked the Plaintiffs to assemble in various parking lots in Brooklyn and Manhattan for pick-up and drop off.

5.      Defendants EISENBACH and SALGADO would meet Plaintiffs and other employees gathered in parking lots to direct Plaintiffs and other employees into vans and trucks to be taken to work sites throughout New York City – typically Manhattan, Queens and Brooklyn and sometimes New Jersey.

6.      Defendants had the Plaintiffs conduct very dangerous demolition and construction work with little to no safety equipment – often without even basic breathing masks - while handling materials such as asbestos, shattered dry wall, rusted metal, insulation, open fuel containers, jackhammers, and other power tools.

7.     Defendants routinely had Plaintiffs ride without safety harnesses in the back of dump trucks – the compactor area - alongside unsecured canisters of gasoline, kerosene, loose tools and debris.

8.     Defendants routinely forced Plaintiffs to ride in work vans and trucks filled with unsecured debris from worksites and unsecured tools.

9.     Several employees have been injured from loose material bouncing without the work vehicles and have fainted from fumes from improperly stored fuels containers in work vehicles.

10.    Defendants routinely prevented Plaintiffs and other employees who were injured on the job from calling 911, travelling to the hospital or making a claim for workers compensation.

11.    Defendants EISENBACH routinely subjected the female employees to outrageous sexual harassment including but not limited to direct solicitations for sex for money and unwelcome physical groping.

12.    Plaintiffs now bring this action on behalf of themselves for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"), including applicable liquidated damages, interest, attorneys' fees, and costs and related claims for discrimination and retaliation.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their business in this district, and Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

15.     Plaintiff CARMELA PACHECO ("Plaintiff CARMELA PACHECO" or "Mr. CARMELA PACHECO") is an adult individual residing Kings County, NY.

16.     Plaintiff MICAELA JUVENCIA SIMAJ ("Plaintiff JUVENCIA SIMAJ") is an adult individual residing in Kings County, NY.

17.     Plaintiff JOSE MARGARITO MORALES ORELLANA ("Plaintiff MORALES ORELLANA") is an adult individual residing in Kings County, NY.

18.     Plaintiff JUAN ANTONIO MORALES ("Plaintiff ANTONIO MORALES") is an adult individual residing in Kings County, NY.

19.     Plaintiff MIRIAM FLORES ANTONIO ("Plaintiff FLORES ANTONIO") is an adult individual residing in Kings County, NY.

20.     Plaintiff MARISOL LOPEZ ("Plaintiff MARISOL LOPEZ") is an adult individual residing in Queens County, New York.

21.     Plaintiff JUAN PINEDA ("Plaintiff PINEDA") is an adult individual residing in Kings County, NY.

22.     Plaintiff LESLEYANN BRAVO ("Plaintiff BRAVO") is an adult individual residing in Kings County, New York.

4

23.     Plaintiff JUAN CARLOS ECHEVARIA ACARO ("Plaintiff ACARO") is an adult individual residing in Kings County, New York.

*Defendants*

24.     Defendant PRESCO INDUSTRIES INC. is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1312 44th Street Brooklyn, NY 11219.

25.     Defendant NEW YORK PRESCO INC. is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1973 60th Street Brooklyn, NY 11204.

26.     Defendant MIST ENTERPRISE INC. is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 5314 16th Avenue, Suite 260 Brooklyn, NY 11204.

27.     Defendant MEJOR TRABAJO INC. is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1274 49th Street, Suite 209 Brooklyn, NY 11219.

28.     Defendant DESIGN N SAFETY INC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1906 59th Street Brooklyn, NY 11204.

29.     Defendants operated interchangeably between the Defendant Corporations at the whim of Defendants EISENBACH, SALGADO and AINHORN.

30.     Defendants did not honor the requisite corporate formalities in the conduct of their business and routinely intermingled the operations of each Defendant Corporation.

31.     Defendant YAKOV EISENBACH is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant YAKOV EISENBACH is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporations.

32.     Defendant YAKOV EISENBACH possesses or possessed operational control over Defendant Corporations, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations.

33.     Defendant YAKOV EISENBACH had the power to hire and fire Plaintiffs.

34.     Defendant YAKOV EISENBACH hired and fire Plaintiffs.

35.     Defendant YAKOV EISENBACH issued orders and job assignments to Plaintiffs.

36.     Defendant YAKOV EISENBACH directed the work of Plaintiffs at the majority of job sites.

37.     Defendant YAKOV EISENBACH disciplined Plaintiffs.

38.     Defendant YAKOV EISENBACH issued pay to Plaintiffs.

39.     Defendant YAKOV EISENBACH determined the wages and compensation of the Plaintiffs.

40.     Defendant YAKOV EISENBACH controlled Plaintiffs pay rates and schedules.

41.     Defendant ANDRES SALGADO is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant ANDRES SALGADO is sued individually in his capacity as an agent of Defendant Corporations.

42.     Defendant ANDRES SALGADO had the power to hire and fire Plaintiffs.

43.     Defendant ANDRES SALGADO hired and fired employees including some Plaintiffs.

44.     Defendant ANDRES SALGADO controlled the work assignments at the majority of worksites.

45.     Defendant ANDRES SALGADO issued pay to Plaintiffs.

46.     Defendant ANDRES SALGADO issued and controlled work assignments made to Plaintiffs.

47.     Defendant ANDRES SALGADO possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations.

48.     Defendant ANDRES SALGADO determined the wages and compensation of the Plaintiffs.

49.     Defendant MORDECHAI AINHORN (AKA 'MONTY') is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant AINHORN is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations NEW YORK PRESCO INC., MIST ENTERPRISE INC. and PRESCO INDUSTRIES INC.

50.     Defendant MORDECHAI AINHORN (AKA 'MONTY') possesses or possessed operational control over Defendant Corporations, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations.

51.     Defendant MORDECHAI AINHORN (AKA 'MONTY') is the Chief Executive Officer of Defendants PRESCO INDUSTRIES INC., MIST ENTERPRISE INC., and NEW YORK PRESCO INC.

7

52.     Upon information and belief, Defendant MORDECHAI AINHORN (AKA 'MONTY') participated in the decisions regarding the manner in which Plaintiffs were paid and the hours they worked.

53.     Defendant MORDECHAI AINHORN (AKA 'MONTY') had power and authority over the payroll practices at PRESCO INDUSTRIES INC., MIST ENTERPRISE INC. and NEW YORK PRESCO INC. and controlled the financial structure of each Defendant Corporation.

54.     Defendant MORDECHAI AINHORN (AKA 'MONTY') had the power to hire and fire Plaintiffs.

55.     Upon information and belief, Defendant MORDECHAI AINHORN (AKA 'MONTY') had the last word on all decisions regarding the operation of Presco Demolition and each Defendant Corporation.

*Defendants Constitute Joint Employers*

56.     Individual defendant YAKOV EISENBACH possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporations, and controls significant functions of Defendant Corporations.

57.     Individual defendant ANDRES SALGADO possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations.

58.     Individual defendant MORDECHAI AINHORN (AKA 'MONTY') possesses operational control over Defendant Corporations, possesses ownership interests in Defendant Corporations, and controls significant functions of Defendant Corporations.

59.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

60.     Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs.

61.     Each Defendant intermingled operations and employees without any regard for corporate formalities.

62.     Defendants arrived at pick-up locations with a small fleet of trucks registered to either Presco Industries Inc., Mist Enterprise Inc. and the other Defendant Corporations and would divide the Plaintiffs between the work trucks on a day by day basis depending on the needs of the business.

63.     Defendants freely interchanged trucks, equipment and employees, including Plaintiffs, across any worksite where any one of the Corporate Defendants or Individual Defendants operated, sometimes moving Plaintiffs and other employees across worksites within the same day.

64.     The individual Defendants employed Plaintiffs at any job site at their convenience with no regard for which corporation might have been associated with the appropriate permits for any given job site.

65.     The individual Defendants issued pay to the Plaintiffs for any work they performed during the week regardless of which corporation might have been associated with any jobsite.

66.     Defendants jointly employed Plaintiffs within the meaning of 29 U.S.C. § 201 e*t seq*. and the NYLL.

67.     In the alternative, Defendants constitute a single employer of Plaintiffs.

68.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of compensation in exchange for their services.

69.     Upon information and belief, in each year from 2015 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

70.     Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used during the Plaintiff's employ, such as cement, dry wall, hammers, power tools, trucks and vans, turpentine and other demolition and construction supplies were produced outside the State of New York.

71.     Some Plaintiffs were individually engaged in interstate commerce by serving at construction sites out of state.

*Plaintiff CARMELA PACHECO*

72.     Plaintiff CARMELA PACHECO worked as a laborer and driver for the Defendants from June 2015 until September 2018.

73.     Plaintiff CARMELA PACHECO worked the following typical six (6) day schedule:

    a.  Monday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    b.  Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    c.  Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    d.  Thursday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    e.  Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

     f.   Saturday: Typical day off.

     g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

74.     From June of 2016 until September of 2018, Defendants paid Plaintiff Pacheco a fixed day rate of $100 per day.

75.     Defendants never provided Plaintiff PACHECO with each payment of wages a proper statement of wages, as required by NYLL 195(3).

76.     Defendants never provided Plaintiff PACHECO, any notice in English and in Spanish (Plaintiff's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.     Plaintiff CARMELA PACHECO regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*Plaintiff MICAELA JUVENCIA SIMAJ*

78.     Plaintiff JUVENCIA SIMAJ was employed by Defendants from approximately July 2016 until approximately August 2018.

79.     Plaintiff JUVENCIA SIMAJ worked the following typical six (6) day schedule:

     a.   Monday: 7:30 A.M. until between 7:00 P.M. and 10:30 P.M.

     b.   Tuesday: 7:30 A.M. until between 7:00 P.M. and 10:30 P.M.

     c.   Wednesday: 7:30 A.M. until between 7:00 P.M. and 10:30 P.M.

     d.   Thursday: 7:30 A.M. until between 7:00 P.M. and 10:30 P.M.

     e.   Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

     f.   Saturday: Typical Day Off

     g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

80.     From July of 2016 until August of 2018, Defendants paid Plaintiff JUVENCIA

SIMAJ a fixed day rate of $100 per day.

81.     Defendants never provided Plaintiff JUVENCIA SIMAJ  with each payment of wages a proper statement of wages, as required by NYLL 195(3).

82.     Defendants never provided Plaintiff JUVENCIA SIMAJ , any notice in English and in Spanish (Plaintiff's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

83.     Plaintiff JUVENCIA SIMAJ  regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*Plaintiff JOSE MARGARITO MORALES ORELLANA*

84.     Plaintiff MORALES ORELLANA was employed by Defendants as a laborer from approximately July 2015 until approximately May 2019.

85.     Plaintiff MORALES ORELLANA worked the following typical six (6) day schedule:

    a.  Monday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    b.  Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    c.  Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    d.  Thursday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

    e.  Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

    f.  Saturday: Typical Day Off

    g.  Sundays: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

86.     From July of 2015 until February of 2019, Defendants paid Plaintiff MORALES ORELLANA a fixed shift rate of $100.00 for work between 8 P.M. and 5 P.M. and $15.00 an hour for hours worked past 5 P.M.

87.     Defendants never provided Plaintiff MORALES ORELLANA with each payment of wages a proper statement of wages, as required by NYLL 195(3).

88.     Defendants never provided Plaintiff MORALES ORELLANA, any notice in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

89.     Plaintiff MORALES ORELLANA regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF JUAN ANTONIO MORALES*

90.     Plaintiff ANTONIO MORALES was employed by Defendants as a laborer from approximately July 2013 until February 2019.

91.     Plaintiff ANTONIO MORALES worked the following typical six (6) day schedule:

   a.   Monday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   b.   Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   c.   Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   d.   Thursday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   e.   Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

   f.   Saturday: Typical Day Off

   g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

92.     In the first period of his employ, Defendants paid Plaintiff ANTONIO MORALES a fixed day rate of $100 per day, then $110 per day in approximately 2016, then $120 per day in 2017 then $130 per day for the last six months of his employ

93.     Defendants never provided Plaintiff ANTONIO MORALES with each payment of wages a proper statement of wages, as required by NYLL 195(3).

94.     Defendants never provided Plaintiff ANTONIO MORALES, any notice in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

95.     Plaintiff ANTONIO MORALES regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF MIRIAM FLORES ANTONIO*

96.     Plaintiff FLORES ANTONIO was employed by Defendants as a laborer from approximately September of 2016 until July 2018.

97.     Plaintiff FLORES ANTONIO worked the following typical six (6) day schedule:

   a.   Monday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

   b.   Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

   c.   Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

   d.   Thursday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

   e.   Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

   f.   Saturday: Typical Day Off

   g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

98.     From September 2016 until July 2018, Defendants paid Plaintiff FLORES ANTONIO a fixed shift rate of $100.00 for work between 8 P.M. and 5 P.M. and $15.00 an hour for hours worked past 5 P.M.

99.     Defendants never provided Plaintiff FLORES ANTONIO with each payment of wages a proper statement of wages, as required by NYLL 195(3).

100.   Defendants never provided Plaintiff FLORES ANTONIO, any notice in English and in Spanish (Plaintiff's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.   Plaintiff FLORES ANTONIO regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF MARISOL LOPEZ*

102.   Plaintiff MARISOL LOPEZ was employed by Defendants as a laborer from approximately August 2016 until August 2018.

103.   Plaintiff MARISOL LOPEZ worked the following typical six (6) day schedule:

   a.   Monday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   b.   Tuesday: 7:30 A.M. until between 7:00 P.M. and 10:30 P.M.

   c.   Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   d.   Thursday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

   e.   Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

   f.   Saturday: Typical Day Off

   g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:30 P.M.

104.   From August 2016 until August 2018, Defendants paid Plaintiff MARISOL LOPEZ a fixed day rate of $100 per day.

105.   Defendants never provided Plaintiff MARISOL LOPEZ with each payment of wages a proper statement of wages, as required by NYLL 195(3).

106.   Defendants never provided Plaintiff MARISOL LOPEZ, any notice in English and in Spanish (Plaintiff's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.    Plaintiff MARISOL LOPEZ regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF JUAN PINEDA*

108.    Plaintiff JUAN PINEDA was employed by Defendants as a laborer from approximately July 2015 until May 2019.

109.    Plaintiff JUAN PINEDA worked the following typical six (6) day schedule:

    a.  Monday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    b.  Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    c.  Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    d.  Thursday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    e.  Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

    f.  Saturday: Typical Day Off

    g.  Sunday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

110.    From July 2015 until May 2019, Defendants paid Plaintiff JUAN PINEDA a fixed shift rate of $100.00 for work between 8 P.M. and 5 P.M. and $15.00 an hour for hours worked past 5 P.M.

111.    Defendants never provided Plaintiff JUAN PINEDA with each payment of wages a proper statement of wages, as required by NYLL 195(3).

112.    Defendants never provided Plaintiff JUAN PINEDA, any notice in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

113.    Plaintiff JUAN PINEDA regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF LESLEYANN BRAVO*

114.    Plaintiff LESLEYANN BRAVO was employed by Defendants as a laborer approximately June of 2016 until September 29th, 2016.

115.    Plaintiff BRAVO worked the following typical six (6) day schedule:

    a.  Monday: 7:30 A.M. until between 5:00 P.M. and 8:00 P.M.

    b.  Tuesday: 7:30 A.M. until between 5:00 P.M. and 8:00 P.M.

    c.  Wednesday: 7:30 A.M. until between 5:00 P.M. and 8:00 P.M.

    d.  Thursday: 7:30 A.M. until between 5:00 P.M. and 8:00 P.M.

    e.  Friday: 7:30 A.M. until 5:00 P.M.

    f.  Saturday: Typical Day Off

    g.  Sunday: 7:30 A.M. until between 5:00 P.M. and 8:00 P.M.

116.    From June 2016 until September 29th 2016, Defendants paid Plaintiff BRAVO a fixed day rate of $100 per day.

117.    Defendants never provided Plaintiff BRAVO with each payment of wages a proper statement of wages, as required by NYLL 195(3).

118.    Defendants never provided Plaintiff BRAVO of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

119.    Plaintiff BRAVO regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*PLAINTIFF JUAN CARLOS ECHEVARIA ACARO*

120.    Plaintiff JUAN CARLO ECHEVARIA ACARO was employed by Defendants as a laborer approximately May of 2014 until April 2019.

17

121.    Plaintiff ECHEVARIA ACARO worked the following typical six (6) day schedule:

    a.   Monday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    b.   Tuesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    c.   Wednesday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    d.   Thursday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

    e.   Friday: 7:30 A.M. until 5:00 P.M. and 7:00 P.M.

    f.   Saturday: Typical Day Off

    g.   Sunday: 7:30 A.M. until between 5:00 P.M. and 10:00 P.M.

122.    From May 2014 until April 2019, Defendants paid Plaintiff ECHEVARIA ACARO a fixed shift rate of $100.00 for work for the first two and half years then a fixed shift rate of $115.00 between 8 P.M. and 5 P.M. and $15.00 an hour for hours worked past 5 P.M.

123.    Defendants never provided Plaintiff ECHEVARIA ACARO with each payment of wages a proper statement of wages, as required by NYLL 195(3).

124.    Defendants never provided Plaintiff ECHEVARIA ACARO, any notice in English and in Spanish (Plaintiff's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

125.    Plaintiff ECHEVARIA ACARO regularly handled goods in interstate commerce, such as tools, construction materials and other supplies produced outside the state of New York.

*Discriminatory and Retaliatory Conduct of Defendant EISENBACH and SALGADO*

126.    Plaintiffs routinely complained about the excessive hours, the lack of proper overtime and minimum wage payments and the dangerous working conditions.

127.    All Plaintiffs complained about the lack of safety equipment and the unnecessary dangers that Defendants forced Plaintiffs to encounter in their demolition and construction work.

128.    Defendants discharged Plaintiffs PACHECO, JUVENCIA SIMAJ, MIRIAM FLORES ANTONIO, and MARISOL LOPEZ for complaining and opposing Defendants pay practices and for complaining about Defendant YAKOV EISENBACH's sexual harassment.

129.    Defendant YAKOV EISENBACH regularly made sexual comments to the female employees including Plaintiffs PACHECO, MIRIAM FLORES ANTONIO, JUVENCIA SIMAJ and MARISOL LOPEZ.

130.    Defendant EISENBACH assigned females employees, including Plaintiffs, the most physically arduous tasks when Plaintiffs and other female employees complained about Defendant EISENBACH's comments and inappropriate touching.

131.    Defendant EISENBACH on several occasions in 2018 inappropriately touched Plaintiff PACHECO, JUVENCIA SIMAJ and MARISOL LOPEZ.

132.    Defendant EISENBACH made comment to Plaintiff PACHECO that he would pay her to suck on her fingers and would pay her for sex.

133.    Defendant EISENBACH touched Plaintiff PACHECO's hair in a suggestive manner at the worksite.

134.    Defendant EISENBACH made sexual comments to Plaintiff JUVENCIA SIMAJ such as, "I like your breasts" and "I like your legs, you have such nice legs".

135.    Defendant EISENBACH touched Plaintiff JUVENCIA SIMAJ on her backside during working hours in a humiliating manner and when Plaintiff JUVENCIA SIMAJ objected Defendant EISENBACH stated in a sarcastic, mocking manner that it was just an accident.

136.    Defendant EISENBACH touched the backside of Plaintiff MARISOL LOPEZ in 2018 in an inappropriate and humiliating manner.

137.    Defendant EISENBACH made sexual and suggestive comments to Plaintiff MARISOL LOPEZ during working hours.

138.    Plaintiffs PACHECO, JUVENCIA SIMAJ, and LOPEZ complained to Defendant SALGADO about Defendant EISENBACH but were disbelieved and ignored.

139.    Defendant EISENBACH ordered Defendant SALGADO to discharge Plaintiffs PACHECO, JUVENCIA SIMAJ, ANTONIO and LOPEZ in retaliation for complaining about and opposing the inappropriate comments, inappropriate contact and complaints about pay.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

140.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

141.    Defendants are employers within the meaning of the Fair Labor Standards Act.

142.    Plaintiffs are employees within the meaning of the Fair Labor Standards Act.

143.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

144.    Plaintiffs were individually engaged in commerce.

145.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

146.    Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the lawful regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

147.    Defendants were aware or should have been aware that their pay practices were unlawful and have not made a good faith effort to comply with the FLSA.

148.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs were damaged in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS**

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were each Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

152.    Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment and had the power to determine the rate and method of any compensation in exchange for their employment.

153.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

154.    Plaintiffs were individually engaged in commerce.

155.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

156.    Defendants failed to pay Plaintiffs at the lawful minimum hourly rate, in violation of 29 U.S.C. § 206(a).

157.    Defendants were aware or should have been aware that their pay practices were unlawful and have not made a good faith effort to comply with the FLSA.

158.    Defendants' failure to pay Plaintiffs at the lawful minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

159.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK LABOR LAW

160.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

161.    Defendants are employers within the meaning of the New York Labor Laws and supporting New York State Department of Labor Regulations and employed the Plaintiffs.

162.    Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the lawful regular rate of pay for each hour worked in excess of forty hours in a workweek.

163.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

164.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## NEW YORK STATE LAW MINIMUM WAGE CLAIM

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    At all times relevant to this action, Defendants were Plaintiffs employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

167.    Defendants had the power to hire and fire Plaintiffs, controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

168.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

169.     Defendants' failure to pay Plaintiffs the minimum wage was willful and not in good faith within the meaning of N.Y. Lab. Law § 663.

170.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING
### REQUIREMENTS OF THE NEW YORK LABOR LAW

171.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

173.     Defendants are liable to Plaintiffs in the amount of $5,000 each, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW

174.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

175.     With each payment of wages, Defendants failed to provide Plaintiffs with a

23

proper and complete wage statement as required by NYLL 195(3).

176.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF FLSA 29 U.S.C. SECTION 215(3) - RETALIATION

177.     Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

178.     All other Plaintiffs opposed Defendants pay practices by routinely complaining about the lack of proper payment along with the dangerous conditions of their employ.

179.     Plaintiffs PACHECO, SIMAJ JUVENCIA, LOPEZ and ANTONIO opposed and complained about the Defendants pay practices.

180.     Defendants' discharge of and hostile behavior towards Plaintiffs PACHECO, SIMAJ JUVENCIA, LOPEZ and ANTONIO constituted retaliation in violation of the Fair Labors Standard Act.

181.     Such retaliation was willful, malicious and otherwise in bad faith.

182.     Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF NYLL SECTION 215(1)(A) - RETALIATION

183.     Plaintiffs repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

184.     A copy of this complaint has been and/or will be at the commencement of this action served on the NY Attorney General.

185.     Defendants took adverse and retaliatory action by discharging Plaintiffs PACHECO, SIMAJ JUVENCIA, ANTONIO and LOPEZ for opposing their harassment and

opposing Defendants pay practices.

186.    Defendants actions against the Plaintiff constituted retaliation in violation of NYLL Section 215(1)(a).

187.    Such actions were willful, malicious and otherwise in bad faith.

188.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF NYC HUMAN RIGHTS LAW– DISCRIMINATORY TREATMENT AND RETALIATION

189.    Plaintiffs repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

190.    Plaintiffs have and/or will serve a copy of this complaint on both the Office of Corporate Counsel of the City of New York and the New York City Commission on Human Rights.

191.    By the actions described above, among others, Defendant discriminated against the female Plaintiffs on the basis of their gender in violation of the NYCHRL by denying them equal terms and conditions of employment, subjecting them to disparate working conditions, harassing them sexually and discharging them for opposing said misconduct.

192.    Defendants actions against the Plaintiffs constituted discriminatory treatment, harassment and retaliation in violation of NYCHRL.

193.    Defendants conduct constitutes malicious, willful and wanton violations of the NYCHRL for which Plaintiffs are entitled to punitive damages.

194.    Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## NEW YORK STATE HUMAN RIGHTS LAW AND EXECUTIVE LAW –

## DISCRIMINATION AND RETALIATION

195.     Plaintiffs repeats and realleges each and every allegation set forth above with the same force and effect as if set forth fully herein.

196.     By the actions described above, among others, Defendant discriminated against the female Plaintiffs on the basis of their gender in violation of the NYSHRL by denying them equal terms and conditions of employment, subjecting them to disparate working conditions, harassing them sexually and discharging them for opposing said misconduct.

197.     Such conduct was severe and pervasive.

198.     Defendants actions against the Plaintiffs constituted discriminatory treatment, harassment and retaliation in violation of NYSHRL.

199.     Defendants conduct constitutes malicious, willful and wanton violations of the NYSHRL.

200.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)     Declaring that Defendants violated the minimum wage and overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(b)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs;

(c)     Declaring that Defendants' violation of the provisions of the FLSA were willful

as to Plaintiffs;

(d)   Awarding Plaintiffs damages for the amount of unpaid minimum wages, overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)   Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime wages and damages, improper deductions or credits and for any withheld gratuities under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)   Declaring that Defendants violated the minimum wage and overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(g)   Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(h)   Declaring that Defendants' violations of the New York Labor Law were willful and not in good faith as to Plaintiffs;

(i)   Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, as applicable;

(j)   Enjoining Defendants from further violations of the NYLL;

(k)   Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)   Awarding Plaintiffs compensatory, economic and non-economic, punitive, special and general, and any other category of damages under state and federal law for the Defendants retaliatory and discriminatory conduct towards Plaintiffs;

(m)   Awarding Plaintiffs liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 and Article 6 as applicable;

(n)     Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(o)     Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees;

(p)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
        September 26th, 2019

By:     */s/ Colin Mulholland*
        Colin Mulholland, Esq.
        30-97 Steinway, Ste. 301-A
        Astoria, New York 11103
        Telephone: (347) 687-2019
        *Attorney for Plaintiffs*

28